ROCHELLE P. TESLER, EXECUTRIX (ESTATE OF MICHAEL A. TESLER) v. GARY T. JOHNSON ET AL. (8718)

SPALLONE, NORCOTT and LANDAU, Js.

Argued October 2—decision released December 11, 1990

*Robert G. Oliver,* with whom was *John W. O'Meara,* for the appellants (named defendant et al.).

*James J. Courtney,* with whom, on the brief, was *Thomas B. Wilson,* for the appellee (plaintiff).

NORCOTT, J. The plaintiff, Rochelle P. Tesler, as executrix of the estate of Michael A. Tesler, instituted this wrongful death action against the defendants Gary Johnson, Randolph T. Johnson and Captain Dick's Saloon Cafe, Inc., for their alleged wanton and reckless conduct in serving alcohol to an intoxicated person.[1] The defendants appeal from the judgment rendered upon a jury verdict in favor of the plaintiff.

The defendants challenge the trial court's failure (1) to explain the concept of proximate cause to the jury, and (2) to instruct the jury properly on the calculation of damages for loss of earning capacity. We agree that the trial court improperly instructed the jury on causation and remand for a new trial. Because the second issue raised by the defendants is likely to arise at the new trial, we address it also.

The jury could reasonably have found the following facts. At approximately 2:30 p.m. on February 10, 1986, Howard Branzell arrived at the Finish Line Cafe, a bar in Groton operated by the defendants. Branzell drank at least six beers at the Finish Line before leaving the bar sometime between 5 and 6 p.m.

---

[1] Gerald Knotts and Howard Branzell were also named as defendants in the plaintiff's complaint. The claims against Gerald Knotts were withdrawn before the verdicts. Howard Branzell is not a party to this appeal. Therefore, we refer herein to Gary Johnson, Randolph T. Johnson and Captain Dick's Saloon Cafe, Inc., as the defendants.

At approximately 6:30 p.m., Branzell, driving his van on Route 117 in Groton, rear-ended a pickup truck driven by Brian Laliberte. Laliberte noticed that Branzell "looked drunk." Although the drivers agreed to pull their vehicles to the side of the road, Branzell got back in his van and drove away. Laliberte followed Branzell to Thomas Road, where Branzell "really took off."

As he was driving south on Thomas Road, Branzell collided head-on with a car driven by Michael Tesler in the northbound lane. Upon arriving at the scene of the accident, Officer Kenneth Kelly of the Groton police department found Branzell standing near his van. Branzell was staggering and smelled of alcohol. His eyes appeared glassy and his speech was slurred. A blood alcohol test performed at approximately 8:50 p.m. revealed that Branzell's blood alcohol level was then .22 percent. Tesler was taken by helicopter to Hartford Hospital, where he died three days later from the injuries he had sustained in the accident.

## I

The defendants claim that the trial court failed to instruct the jury properly on causation.[2] We agree.

In reviewing a challenge to jury instructions, we must examine the charge in its entirety. *Preston* v. *Keith,* 20 Conn. App. 656, 662, 570 A.2d 214, cert. granted, 214 Conn. 807, 573 A.2d 320 (1990). Although the instructions need not be "exhaustive, perfect or technically accurate," they must be "correct in law, adapted to the issues and sufficient for the guidance of the jury." *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953). The jury instructions in the present case fail to meet these standards.

[2] The defendants properly preserved this claim for appeal both by submitting a request to charge and by taking exception to the charge as given. Practice Book § 852.

At trial, the jurors were instructed that they could find the defendants liable only if their conduct "was a substantial factor in causing the death of Michael Tesler . . . ." Although the court used the phrase "substantial factor" several times in its charge, those two words comprised the only definition of causation that was heard by the jury.[3] The court referred to "proximate cause" only once, when explaining that the defendants' liability was limited to those damages "as were proximately caused by the accident in question."[4]

These instructions, although correct in law, were clearly inadequate to guide the jury through the complex maze of causation. "A legal . . . causal connection between the conduct and the resulting injury is a necessary element of causes of action in . . . recklessness." *Boehm* v. *Kish,* 201 Conn. 385, 390, 517 A.2d 624 (1986); *Kowal* v. *Hofher,* 181 Conn. 355, 359–62, 436 A.2d 1 (1980). To be a legal cause, the conduct must be both a cause in fact and a proximate cause of the resulting injury. *Doe* v. *Manheimer,* 212 Conn. 748, 757,

---

[3] The trial court initially phrased the relevant inquiry as whether the defendants "act[ed] in a manner that amounted to wanton and reckless misconduct in serving Howard Branzell liquor, which conduct was a substantial factor in causing the injuries and death of the plaintiff's decedent, Michael A. Tesler." Later in its instructions, the court stated that "[i]f any of [the defendants] acted in that manner which caused or which amounted to wanton and reckless misconduct which was a substantial factor in causing the injuries and death of the plaintiff's decedent, Michael A. Tesler, then you find against those defendants who are all lumped as one on a verdict form." Finally, the trial court admonished the jury, "If you do not find that the plaintiff has proven wanton and reckless misconduct which was a substantial factor in causing the death of the plaintiff's decedent, Michael Tesler, then your verdict must be for these defendants."

[4] In noting defense counsel's objection to this portion of its charge, the trial court explained its failure to use the term "proximate cause" as follows: "I just want to put on the record something that I've wanted to do for a long time. I am trying to avoid the use of the words 'proximate cause' because jurors always seem to think of approximate and they don't seem to understand that word, so that's why I deliberately didn't use that word. But thank you for giving me the opportunity to mention it."

563 A.2d 699 (1989). "The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." *Kowal* v. *Hofher,* supra, 359. A proximate cause is "an act or failure to act which is a substantial factor in producing a result." *Sanders* v. *Officers Club of Connecticut, Inc.,* 196 Conn. 341, 349, 493 A.2d 184 (1985). "To be factors of this degree they must have continued down to the moment of the damage, 'or, at least, down to the setting in motion of the final active injurious force which immediately produced (or preceded) the damage.' " *Mahoney* v. *Beatman,* 110 Conn. 184, 195, 147 A. 762 (1929).

None of these concepts were conveyed to the jury through the trial court's charge on causation. The court did not explain to the jury the difference between a "cause in fact" and a "proximate cause" ; in fact, these terms were never used by the court in its instructions on causation. Although the court did use the phrase "substantial factor" to describe the required connection between the defendants' acts and their putative result, that phrase was never defined for the jury. In a case such as this, in which causation is a highly disputed issue, it is paramount that these terms be adequately explained to the jury. The trial court's failure to do so in the present case, therefore, requires the reversal of its judgment and the remand of this action for a new trial.

## II

The defendants also argue that the trial court failed to instruct the jury properly on the calculation of damages for loss of earning capacity. Specifically, the defendants challenge the court's refusal to charge the jury in accordance with the reasoning of *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 136 A.2d 918 (1957), that, in determining such damages, they must make appropriate deductions for necessary personal living

expenses and income tax liability.[5] Although we are remanding this case on the first issue presented, we address this issue because it may recur on retrial.

The only information received by the jury regarding Tesler's loss of earning capacity came from Richard Martin, an economist who testified as an expert witness for the plaintiff. Martin testified that in making his calculations he had deducted both taxes and living expenses from Tesler's earnings. Martin estimated that, had Tesler pursued a career in computer science, he would have earned $950,800; if Tesler had taken over his father's business he could have earned $1,367,000.

In its instructions to the jury, the trial court noted that "the plaintiff's estate is entitled to recover damages for the destruction of the decedent's capacity to earn money." The court described the proper calculation of such damages only by referring the jury to Martin's testimony.[6]

In *Floyd* v. *Fruit Industries, Inc.,* supra, our Supreme Court first held that any award of damages for loss of earning capacity must be offset by both income tax liability and necessary personal living expenses. In that case, there was a dispute between

[5] The defendants properly preserved this claim for appeal by taking exception to the appropriate portion of the trial court's charge. Practice Book § 852.

[6] The trial court instructed the jury as follows: "[Dr. Martin] testified that he calculated the decedent's reasonably probable earnings up until the end of his work life expectancy. He then testified that he discounted those figures to their present value and determined what the present value economic loss was, and then he gave two separate figures . . . . Dr. Martin explained that he arrived at these figures by making use of widely accepted government publications on life expectancies average earnings, economic projections and census data, among others. You are to consider his testimony in arriving at an award for the estate of Michael Tesler for the destruction of his ability to earn a living."

the parties as to whether and to what extent taxes and living expenses were to be deducted. The court noted that these factors "should, in a proper case, be called to the attention of the jury." Id., 673. Here, the plaintiff argues that these deductions were adequately submitted to the jury through Martin's testimony.

The determination of the amount of damages, if any, to be awarded is within the sole province of the jury. *Holbrook* v. *Casazza,* 204 Conn. 336, 359, 528 A.2d 774, cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1987). It is also the function of the jury alone to judge the credibility of expert witnesses and the weight to be accorded their testimony. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 183, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985). In fact, the jury in the present case was specifically instructed that they could accept or reject any part of Martin's testimony.[7] If they chose to do so, however, the trial court's charge left them with no guidance as to the calculation of damages for loss of earning capacity. To avoid this peculiar problem, therefore, we now hold that, in wrongful death actions, which require a determination of damages for loss of earning capacity, the jurors must be instructed that, in calculating such damages, they are to subtract probable income taxes and necessary personal living expenses.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[7] When discussing expert testimony, the court charged the jury that "even though they are experts, their testimony and their opinion is subject to review at your hands. In other words, just because they are experts, that doesn't mean you have to accept their opinions or their testimony." The court also told the jury that Martin was an expert witness.