[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In their amended thirty-three count complaint, dated November 27, 1995, the plaintiffs allege that defendant Lorraine Jalbert "death coached" the plaintiffs' decedent Julie Merle Epstein and that a number of named defendants were legally responsible for Ms. Jalbert's involvement with the family; that on or about May 31, 1991, Julie Epstein was suffering from metastatic ovarian cancer and was hospitalized at the defendant University of Connecticut Health Center/John Dempsey Hospital (JDH), that prior to the discharge of Julie Epstein from JDH, defendants Barbara Lutz, Helen Smits and Andria A. Martin, employees of JDH, were responsible for arranging, directing, or contracting with defendant Care-At-Home to provide hospice or home care to Julie Epstein at the Epstein's home after discharge that Jalbert and defendant Virginia Olsen, employees of CARE-at HOME, Inc., were assigned to provide care, but Jalbert, it was understood, would not provide direct care, and that Jalbert entered their home on separate occasions and, on June 1, 1991, in the Epstein home, "death coached" Julie Epstein against the family's wishes; causing Julie Epstein severe emotional distress as well as physical trauma, and that Julie Epstein subsequently died at their home six days afterward.
On April 15, 1997, defendants JDH, Lutz, Smits and Martin filed this motion for summary judgment as to Counts 21 to 33, inclusive.
Briefly, Counts 21 and 22, directed against Lutz, allege recklessness/gross negligence and intentional CT Page 8369 infliction of emotional distress, respectively. Counts 23 and 24, directed against Smits and Martin, allege recklessness/gross negligence and intentional infliction of emotional distress, respectively. Count 25, directed against JDH, alleges a violation of the Patient's Bill of Rights set forth in General Statutes § 19a-550. Counts 26 and 27, asserted by J. Epstein and H. Epstein, respectively, directed against Lutz, allege bystander emotional distress sounding in recklessness and grossly negligent conduct. Counts 28 and 29, asserted by H. Epstein and J. Epstein, respectively, the parents of Julie Epstein, directed against Lutz, allege bystander emotional distress based on the intentional conduct of the defendant. Counts 30 and 31, asserted by H. Epstein and J. Epstein, respectively, directed against Smits and Martin, allege bystander emotional distress sounding in recklessness and grossly negligent conduct. Counts 32 and 33, asserted by H. Epstein and J. Epstein, respectively, directed against Smits and Martin, allege bystander emotional distress based on the intentional conduct of the defendants.
I. Count 25 directed against JDH
JDH moves for summary judgment on the grounds that: (1) JDH does not fall within the definition of "chronic disease hospital" as used in General Statutes § 19a-550; (2) the plaintiffs' decedent was not a patient at JDH at the time of the alleged death; and (3) the claim is barred by sovereign immunity because JDH is owned and operated by the State of Connecticut.
On December 15, 1993, this court denied JDH's prior motion to dismiss this count on the basis of JDH's sovereign immunity, the ground that JDH seemed to fall within the definition of a "nursing home facility" or a "chronic disease hospital" under General Statutes § 19a-550 and since this new statute did not specifically exempt state institutions, the sovereign immunity defense was not applicable.
Since then the court has reconsidered this issue, particularly in view of the language in Federal Deposit Ins.Corp. v. Peabody, N.E. Inc. 239 Conn. 93 (1996) "The state's sovereign right not to be sued without its consent is not to be diminished by statute unless a clear intention to that effect . . . is disclosed by the use of express terms or by CT Page 8370 force of a necessary implication" id. 101-102. This language in fact reiterated language earlier employed by our Supreme Court. Murphy v. Ives, 151 Conn. 259, 262-63 (1963).
General Statutes § 19a-550 provides in relevant part: "(a) As used in this section, a `nursing home facility' is as defined in section 19a-251; a `chronic disease hospital' means a long-term hospital having facilities, medical staff and all necessary personnel for the diagnosis, care and treatment of chronic diseases . . . ."
Because the parties disagree as to the meaning of "chronic disease hospital" and the statute does not provide a cross-reference for the terms "long-term" or "chronic disease," which are used to define the term "chronic disease hospital," we look to the legislative history of General Statutes § 19a-550 (a) for insight.
The legislative history of General Statutes § 19a-550
suggests that the definition of "chronic disease hospital" as used in the statute was meant to correspond to its definition in the regulations of the department of health services. The legislative history also refers to the "official categorization" of certain hospitals meant to be covered by General Statutes § 19a-550. The classification of JDH according to the department of health services regulations is helpful in determining whether JDH falls within the meaning of "chronic disease hospital" as used in General Statutes § 19a 550.
Review of the unchallenged facts demonstrate that JDH is licensed as a general hospital, not as a chronic disease hospital. JDH also had this same classification in 1991, at the time when plaintiffs' decedent was a patient at JDH, according to the affidavits filed by defendants. Section 19 13-Dl of the Regulations of Connecticut State Agencies differentiates between short-term and long-term hospitals. Under the general classification of "short-term hospitals" lies "general" hospitals; Regs., Conn. State Agencies § 19 13-D1(a)(1)(A); whereas "long-term hospitals" include "chronic disease" hospitals. Regs., Conn. State Agencies § 19-13 D1(a)(2)(A). It appears that a "general" hospital is not the equivalent of a "long-term" or a "chronic disease" hospital for purposes of either section 19-13-D1 of the Regulations of Connecticut State Agencies or General Statutes § 19a-550. CT Page 8371
Accordingly, JDH's motion for summary judgment is granted because it is now concluded that JDH does not fall under the scope of General Statutes § 19a-550. It is therefore unnecessary to discuss JDH's second and third arguments in support of its motion for summary judgment.
II. Counts 21-24 and 26-33 as to Lutz, Smits and Martin
In their motion for summary judgment, the defendants argue that Counts 21-24 and 26-33, directed against Lutz, Smits and Martin, are barred by the doctrine of sovereign immunity and that the plaintiffs failed to receive permission to sue from the claims commissioner pursuant to General Statutes §§ 4-160 and 4-165. In the alternative, the defendants argue that (1) the plaintiffs have not pleaded sufficient facts to show wanton, reckless, malicious, or intentional conduct; and (2) relating to Counts 26-33, Connecticut does not recognize a cause of action for bystander emotional distress in malpractice actions and that even if the plaintiffs' case is not classified as a medical malpractice action, the plaintiffs' cause of action does not survive the test for bystander emotional distress as outlined in Clohessyv. Bachelor, 237 Conn. 31 (1996).
As to the latter claims relating to bystander emotional distress, Judge Maloney ruled on October 19, 1995 that the plaintiffs alleged sufficient facts to support a cause of action for bystander emotional distress and these claims will not be reconsidered CFM of Connecticut, Inc. v. Chowdbury,239 Conn. 375 (1996).
Because the defendants assert that Counts 21-24 and 26-33
are all barred based on sovereign immunity, under General Statutes § 4-165, we first address this issue before proceeding to the merits of each claim.
A. Sovereign Immunity
General Statutes § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." (Emphasis added.) General Statutes § 4-160 (a) provides: "When the Claims Commissioner deems it just and CT Page 8372 equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable."
Relying on Dubay v. Irish, 207 Conn. 518 (1988), the defendants contend that neither Lutz, Smits nor Martin possessed the requisite intent to harm the plaintiffs, thus their acts cannot be classified as reckless.
 Recklessness is a state of consciousness with reference to the consequences of one's acts . . . . It is more than negligence, more than gross negligence . . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them . . . . Wanton misconduct is reckless misconduct . . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action . . . . Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse . . . . Its characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. Not only the action producing the injury but the resulting injury also must be intentional . . . ." Dubay v. Irish, supra, 207 Conn. 532-33.
Counts 21-24 and 26-33 all sound in recklessness or intentional conduct. Intentional conduct rises to the level of willfulness and wantonness for purposes of a General Statutes § 4-165 claim but the complaint must make a specific allegation setting out the conduct that is claimed to be reckless or malicious. Tremblay v. Webster, Superior Court, judicial district of New London at New London, Docket No. 530898.(February 23, 1995, Hurley, J.). Because the allegations in the present complaint sound in reckless and intentional conduct, the bar of sovereign immunity as set forth in General Statutes § 4-165 is inapplicable. Joyner v.Farrar, Superior Court, judicial district of New Haven at New Haven, Docket No. 377023 (October 31, 1995, Fracasse, J.); CT Page 8373Joyner v. Barbieri, Superior Court, judicial district of New Haven at New Haven, Docket No. 374626 (November 16, 1995, Freedman, J.).
Defendants' argument that the plaintiffs' claims are precluded because of the plaintiffs' failure to obtain consent to sue from the claims commissioner via the procedure set forth in General Statutes § 4-160 is unpersuasive. Although [General Statutes § 4-160] requires a plaintiff to get permission from the claims commissioner to sue a state official or employee for negligence, no such permission is required to bring a claim for reckless, wanton or malicious conduct. Bellino, Sr. v. Dept. of Correction John Doe(s),
Superior Court, judicial district of New Haven at New Haven, Docket No. 379427 (August 7, 1996, Zoarski, S.T.R.); see alsoHackett v. State, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 352161 (November 28, 1990, Stengel, J.).
For the foregoing reasons, defendants' motion for summary judgment as to Counts 21-24 and 26-33, on the ground of sovereign immunity, is denied.
B. Counts 21, 22, and 26-29, directed against Lutz
1. Recklessness and Gross Negligence: Count 21
There appears to be a genuine issue of material fact exists as to Lutz's involvement in the discharge planning and arrangement of hospice or home nursing care for plaintiffs' decedent. In her affidavit, Lutz states that she did not have any contact with Julie or Jack Epstein. The affidavit, however, does not attest that Lutz did not speak, meet or correspond with H. Epstein. The deposition testimony of H. Epstein, submitted by both the defendants and the plaintiffs, suggests the existence of a genuine issue of material fact as to Lutz's role in the plaintiffs' decedent's care.
Whether Lutz's conduct in the discharge planning and arrangement of home nursing or hospice services rose to the level of recklessness is a question of fact. See, e.g., Palmv. Zazzarino, Superior Court, judicial district of New Haven at New Haven, Docket No. 291427 (August 31, 1995, Martin, J.). Summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with CT Page 8374 questions of motive, intent and subjective feelings and reactions. Suarez v. Dickmont Plastics Corp., 229 Conn. 99,111 (1994). Defendants' motion for summary judgment as to count 21 is denied.
2. Intentional Infliction of Emotional Distress: Count 22
To prevail on a claim for intentional infliction of emotional distress, the plaintiff must establish the following four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind . . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort . . . ."DeLaurentis v. New Haven, 220 Conn. 225, 266-67 (1991).
Defendants' motion for summary judgment as to count 22, directed against Lutz, is denied because of the existence of a genuine issue of material fact as to the extent and nature of Lutz's conduct with regard to the discharge planning and arrangement of home health care for plaintiffs' decedent.Brown v. Ellis, 40 Conn. Sup. 165, 167-68 (1984).
3. Bystander Emotional Distress: Counts 26-29
The Connecticut Supreme Court recently concluded that a bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injured victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a CT Page 8375 disinterested witness and which is not the result of an abnormal response. Clohessy v. Bachelor, supra, 237 Conn. 56.
Whether the four-prong test of Clohessy v. Bachelor,
supra, 237 Conn. 31, is met is a question of fact, particularly as to Lutz's role in the arrangement of plaintiffs' decedent's home health care. Motion for summary judgment as to Counts 26-29 is denied.
C. Counts 23, 24 and 30-33, directed against Smits and
 Martin
Even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact. See, e.g., Connell v. Colwell, [214 Conn. 242,251 (1990)]; Dubay v. Irish, 207 Conn. 518, 534 (1988);Multi-Service Contractor, Inc. v. Vernon, 193 Conn. 446, 452
(1984).
It does not appear that the plaintiffs have established a sufficient factual predicate to raise a genuine issue of fact with respect to Smits' and Martin's involvement in the discharge planning and arrangement of home nursing or hospice care for the plaintiffs' decedent. Defendants have submitted the affidavits of Smits and Martin, and the deposition testimony of H. Epstein which affirm that Smits and Martin played no role in arranging or referring Care to the plaintiffs or the plaintiffs' decedent. The deposition testimony of H. Epstein further supports the statements in the affidavits that neither Smits nor Martin played any role in the discharge planning or home nursing referral. Although affidavits submitted by the moving party are held to a stringent standard; the affidavits read together with H. Epstein's own deposition testimony, indicate that Smits and Martin were not involved in the discharge planning of plaintiffs' decedent, nor did Smits or Martin refer the plaintiffs to Care. The plaintiffs have not submitted any evidence which would indicate otherwise.
1. Recklessness and Gross Negligence: Count 23
Since neither Smits nor Martin played any role in the facts underlying the plaintiffs' case and did not know the CT Page 8376 plaintiffs prior to the commencement of this lawsuit, it may be conclusively inferred that neither Smits nor Martin could have acted recklessly or with deliberate disregard to the plaintiffs. To be a legal cause, the conduct must be both a cause in fact and a proximate cause of the resulting injury. Proximate cause is an act or failure to act which is a substantial factor in producing a result. Tesler v. Johnson,23 Conn. App. 536, 539, 583 A.2d 133 (1990). Without any reckless conduct on the part of Smits and Martin they can have no causal connection to the plaintiffs' injuries. Motion for summary judgment as to count 23 directed against Smits and Martin is granted.
2. Intentional Infliction of Emotional Distress: Count 24
Since Smits and Martin have no relation to the facts underlying the plaintiffs' cause of action and the plaintiffs have failed to demonstrate their involvement in plaintiffs' decedent care, they have also failed to establish the necessary factual predicate that Smits or Martin intended to harm the plaintiffs. See Wadia Enterprises, Inc. v.Hirschfeld, 224 Conn. 240, 250 (1992). Defendants' motion for summary judgment as to count 24 is granted.
3. Bystander Emotional Distress: Counts 30-33
The plaintiffs' Counts against Smits and Martin in bystander emotional distress stem from the same factual allegations underlying Counts 23 and 24 for recklessness/gross negligence and intentional infliction of emotional distress. Since the plaintiffs have failed to demonstrate a genuine issue of material fact as to Smits' and Martin's involvement in the discharge planning or arrangement of home nursing care for plaintiffs' decedent and, thus have failed to show any reckless conduct or intent to harm on the part of Smits and Martin, it is clear that the plaintiffs have also failed to establish a factual predicate for Counts 30-33 in bystander emotional distress. Motion for summary judgment is granted as to Counts 30-33.
CONCLUSION
Summary judgment is granted as to Counts 23-24, 25, and30-33, and denied as to Counts 21-22 and 26-29. CT Page 8377
Jerry Wagner Judge Trial Referee