# MARY A. CLOHESSY ET AL. *v.* KENNETH L. BACHELOR ET AL.
## (15188)

Peters, C. J., and Callahan, Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued November 28, 1995—officially released May 21, 1996

*Robert I. Reardon, Jr.*, with whom were *Lily Nagardeolekar* and, on the brief, *Maryann Diaz*, for the appellants (plaintiffs).

*Francis D. Paola, Jr.*, with whom, on the brief, was *Timothy G. Zych*, for the appellees (defendants).

*Joram Hirsch* and *Jeffrey S. Wildstein* filed a brief for the Connecticut Trial Lawyers' Association as amicus curiae.

BERDON, J. In this appeal we must determine whether a parent and a sibling can recover damages for the emotional anguish they sustained by witnessing the parent's other young child being fatally injured as a result of an accident caused by the negligence of the defendant. We conclude that, because certain conditions have been satisfied, both the parent and the sibling of the tort victim may recover damages for the negligent infliction of emotional distress.

In the third count of a three count[1] complaint, the plaintiffs Mary A. Clohessy (Clohessy) and her son Liam Clohessy (Liam),[2] respectively, the mother and brother of the decedent, Brendan P. Clohessy (Brendan), sought damages for the severe emotional distress they allegedly suffered as a result of observing an automobile

[1] The plaintiffs brought a three count complaint against the defendants for compensatory, double or treble, and punitive damages. In the first count, the plaintiffs Mary A. Clohessy and John Patrick Clohessy, as coadministrators of the estate of their son, Brendan P. Clohessy, sought damages from the defendants for the wrongful death of Brendan as a result of the negligent operation of a motor vehicle by the defendant Kenneth L. Bachelor. In the second count, they also sought, as administrators of the estate, damages from the defendants based upon Bachelor's alleged reckless operation of the motor vehicle.

[2] Liam, a minor, brought the action through his father and next friend, John Patrick Clohessy. For simplicity, we refer only to Liam.

operated by the defendant Kenneth L. Bachelor[3] strike Brendan, resulting in Brendan's death. After the trial court granted the defendant's motion to strike the third count of the plaintiffs' complaint on the ground that it failed to state a cause of action,[4] judgment was rendered against Clohessy and Liam on that count.[5] We reverse the trial court's judgment and remand the case for further proceedings.

The facts alleged in, and to be inferred reasonably from, the third count of the complaint are as follows. On March 22, 1993, Brendan, a seven year old child, left St. Mary's Church on Hillhouse Avenue in New Haven with his mother, Clohessy, and his brother, Liam, and attempted to cross Hillhouse Avenue at the intersection of Trumbull Street within a marked crosswalk. Liam was immediately to the right of Clohessy and Brendan was immediately to her left. The defendant was operating an automobile on Trumbull Street at an excessive speed when the exterior side view mirror of his vehicle struck Brendan's head, hurling Brendan onto the road.[6] Both Clohessy and Liam witnessed the impact

[3] The action was also brought against the defendant Heather J. Falzano, the owner of the vehicle operated by Bachelor, seeking liability on the basis of agency. Hereinafter, references to the defendant are to Bachelor alone.

[4] For the purpose of determining whether the third count is legally sufficient, the "motion to strike . . . admits all facts well pleaded." (Internal quotation marks omitted.) *Ferryman* v. *Groton*, 212 Conn. 138, 142, 561 A.2d 432 (1989). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). "What is necessarily implied need not be expressly alleged." (Internal quotation marks omitted.) *Ferryman* v. *Groton*, supra, 146.

[5] Upon the granting of the motion to strike the third count, the trial court, at the request of the parties, rendered judgment on that count pursuant to Practice Book § 4002 (b). Thereupon, the plaintiffs brought this appeal to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[6] The plaintiffs allege that the defendant committed several acts of negligence, one or more of which were the proximate cause of the accident that led to the death of Brendan.

and went to Brendan's assistance, holding him as he experienced pain and suffering from his fatal head injuries. They suffered serious injuries as a result of the emotional shock and mental anguish of witnessing the accident that eventually led to Brendan's death.

I

In granting the defendant's motion to strike the plaintiffs' third count seeking damages for emotional distress suffered by a bystander, the trial court relied upon our decisions in *Strazza* v. *McKittrick*, 146 Conn. 714, 156 A.2d 149 (1959), *Amodio* v. *Cunningham*, 182 Conn. 80, 438 A.2d 6 (1980), and *Maloney* v. *Conroy*, 208 Conn. 392, 545 A.2d 1059 (1988). We therefore begin our analysis with a review of those cases.

In *Strazza*, the defendant negligently drove his truck onto the porch of the plaintiff's house. "The impact shook the house, causing the plaintiff to drop the dishes [she was holding], lose her balance, and lean against the sink. . . . The plaintiff screamed with fright and became hysterical, thinking of disaster by earthquake. . . . Sometime after the impact, her husband inquired about [their seven year old child], and the plaintiff, thinking that the boy had been on the porch, became fearful that he had been injured. This fear aroused a new anxiety." *Strazza* v. *McKittrick*, supra, 146 Conn. 716–17. The plaintiff's only medical treatment was for a nervous condition that resulted from the fear of injury to her child. The court concluded that the plaintiff, because she "was within the range of ordinary danger," could recover damages for the emotional distress she experienced as a result of her being put in fear for her own safety, even though she had sustained no consequential physical injury. Id., 718. In reaching its conclusion, the court relied on *Orlo* v. *Connecticut Co.*, 128 Conn. 231, 239, 21 A.2d 402 (1941), which held that "where it is proven that negligence proximately caused

fright or shock [with respect to the person's own safety] in one who is within the range of ordinary physical danger from that negligence, and this in turn produced injuries such as would be elements of damage had a bodily injury been suffered, the injured party is entitled to recover."

In *Strazza*, however, the court did not permit the plaintiff to recover for the fright she had suffered from mistakenly believing that her child had been on the porch and had been injured. Relying upon the decisions of the courts of other states prior to 1959, which universally denied recovery for bystander emotional distress, the court held that the plaintiff "cannot recover for injuries occasioned by fear of threatened harm or injury to the person or property of another. . . . Such injuries are too remote in the chain of causation to permit recovery. . . . Even where a plaintiff has suffered physical injury in the accident, there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another. [Annot.] 18 A.L.R.2d 220, 224, 234; 38 Am. Jur. 660, § 18; 67 C.J.S. 761, § 55." (Citations omitted.) *Strazza* v. *McKittrick*, supra, 146 Conn. 719.

In *Amodio*, the plaintiff mother sought damages for emotional distress sustained as a result of the defendant physician's alleged medical malpractice that she claimed caused the death of her daughter. The plaintiff urged this court to recognize a cause of action for bystander emotional distress as set forth in *Dillon* v. *Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968). The California Supreme Court in *Dillon*, relying on established principles of negligence, focused on foreseeability, and held that "[s]ince the chief element in determining whether [a] defendant owes a duty or an obligation to [a] plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability

such duty or obligation must necessarily be adjudicated only upon a case-by-case basis." Id., 740. The *Dillon* court then set forth three factors to consider in determining whether the emotional injury to the bystander is reasonably foreseeable: "(1) Whether [the] plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon [the] plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether [the] plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." Id., 740–41.

The *Dillon* court went on to state that "[t]he evaluation of these factors will indicate the degree of the defendant's foreseeability: obviously [the] defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it. The defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional reaction. All these elements, of course, shade into each other; the fixing of obligation, intimately tied into the facts, depends upon each case." Id., 741.

The court in *Amodio* recognized that a "growing number of jurisdictions, beginning in 1968 with the California decision in *Dillon* . . . have recently recognized a cause of action for emotional distress in favor of a bystander to the negligently caused injury of another party." *Amodio* v. *Cunningham*, supra, 182 Conn. 87.

The court also observed that under *Dillon* "the require-ment of 'sensory and contemporaneous observance' does not require a visual perception of the impact although it does require that the plaintiff bystander otherwise apprehend the event." Id., 89–90. Without rejecting the foreseeability approach, the *Amodio* court held that the plaintiff mother could not recover under *Dillon* because she did not have a contemporaneous sensory perception of the doctor's acts of negligence. "Merely observing the consequences of the defendant's negligence towards another person without perceiving the actual negligent behavior, however, is insufficient to maintain a cause of action for emotional distress to a bystander." Id., 90.

This court again addressed the question of bystander emotional distress based upon medical malpractice in *Maloney* v. *Conroy*, supra, 208 Conn. 392, where the tort victim was the plaintiff's mother. After *Amodio*, but before *Maloney* was decided, however, California, in *Ochoa* v. *Superior Court*, 39 Cal. 3d 159, 703 P.2d 1, 216 Cal. Rptr. 661 (1985), relaxed *Dillon*'s contempora-neous sensory perception requirement in the context of a medical malpractice case. In *Ochoa*, as in *Maloney*, the plaintiff observed the effects of the medical mal-practice over a period of time. The Supreme Court of California concluded that "the 'sudden occurrence' requirement is an unwarranted restriction on the *Dillon* guidelines"; id., 168; and that the contemporaneous per-ception of the negligent act requirement for a medical malpractice case was satisfied "when there is observa-tion of the defendant's conduct and the child's injury and contemporaneous awareness the defendant's con-duct or lack thereof is causing harm to the child . . . ." Id., 170.

In *Maloney*, this court, again leaving the door open for the foreseeability rule as set forth in *Dillon*, rejected the California Supreme Court's reasoning in *Ochoa*.

"Whatever may be the situation in other contexts where bystander emotional disturbance claims arise, we are convinced that, with respect to such claims arising from malpractice on another person, we should return to the position we articulated in *Strazza* that there can be no recovery for nervous shock and mental anguish caused by the sight of injury or threatened harm to another." (Internal quotation marks omitted.) *Maloney* v. *Conroy*, supra, 208 Conn. 402.

When this court decided *Strazza* in 1959, the nearly unanimous weight of authority refused, as previously stated, to recognize a cause of action for bystander emotional injuries. Indeed, even with respect to fear of injury to oneself, many courts required that there be actual physical impact with the plaintiff's person in order for there to be recovery for emotional distress. W. Prosser, Torts (4th Ed. 1971) § 54, p. 333; annot., 18 A.L.R.2d 220 (1951). If, however, there was "impact some [courts] have been willing to allow damages due in part to fear for another." W. Prosser, supra, p. 333. "Until 1968 the only cases allowing recovery for mental disturbance at the peril of another were old ones in intermediate courts, which were ambiguous, and probably to be explained on the basis of threatened physical injury to the plaintiff herself." Id., p. 334.

Since this court decided *Strazza*, two principal schools of thought have emerged in support of allowing bystanders a cause of action for emotional distress—"zone of danger" and "reasonable foreseeability." We now examine the respective merits of each of these schools of thought.

A

In 1965, six years after *Strazza* and three years before *Dillon*, the American Law Institute adopted §§ 313 and

436 of the Restatement (Second) of Torts (1965),[7] which generally allow recovery for emotional distress suffered by a bystander under the zone of danger theory. Simply stated, the zone of danger rule "allows one who is himself or herself threatened with bodily harm in consequence of the defendant's negligence to recover for emotional distress resulting from viewing the death or serious physical injury of a member of his or her immediate family . . . ." *Bovsun* v. *Sanperi*, 61 N.Y.2d 219,

---

[7] Section 313 of the Restatement (Second) of Torts (1965) provides: "(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

"(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

"(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

"(2) The rule stated in Subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other."

The comment to subsection (2) of § 313 provides in relevant part: "As to the rule to be applied where the other is threatened with bodily harm in another manner, and instead suffers emotional distress at the peril or harm of a third person, which results in bodily harm to the other, see § 436."

Section 436 of the Restatement (Second), supra, provides: "(1) If the actor's conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability.

"(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

"(3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence."

Further, § 436A of the Restatement (Second), supra, provides: "If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."

228, 461 N.E.2d 843, 473 N.Y.S.2d 357 (1984). The rule is premised on the "concept that by unreasonably endangering the plaintiff's physical safety the defendant has breached a duty owed to him or her for which he or she should recover all damages sustained including those occasioned by witnessing the suffering of an immediate family member who is also injured by the defendant's conduct." Id., 229; 2 Restatement (Second), supra, § 313.[8] Although permitting recovery for damages on a claim of bystander emotional distress, advocates of the zone of danger rule argued that "[u]se of the [rule] . . . mitigates the possibility of unlimited recovery . . . by restricting liability in a much narrower fashion than does the *Dillon* rule."[9] *Bovsun* v. *Sanperi*, supra, 229. The New York Court of Appeals has further restricted liability under the zone of danger rule by holding that "[r]ecovery of damages by bystanders for the negligent infliction of emotional distress should be limited only to the immediate family." *Trombetta* v. *Conkling*, 82 N.Y.2d 549, 551, 626 N.E.2d 653, 605 N.Y.S.2d 678 (1993).

---

[8] The comment to subsection (2) of § 313 of the Restatement (Second), supra, provides in relevant part: "Thus, where the actor negligently runs down and kills a child in the street, and its mother, in the immediate vicinity, witnesses the event and suffers severe emotional distress resulting in a heart attack or other bodily harm to her, she cannot recover for such bodily harm unless she was herself in the path of the vehicle, or was in some other manner threatened with bodily harm to herself otherwise than through the emotional distress at the peril to her child."

[9] Our research reveals that thirteen jurisdictions have adopted the zone of danger rule: *Pierce* v. *Casas Adobes Baptist Church*, 162 Ariz. 269, 782 P.2d 1162 (1989); *Hale* v. *Morris*, 725 P.2d 26 (Colo. 1986); *Robb* v. *Pennsylvania R. Co.*, 58 Del. 454, 210 A.2d 709 (1965); *Williams* v. *Baker*, 572 A.2d 1062 (D.C. 1990); *Seef* v. *Sutkus*, 205 Ill. App. 3d 312, 562 N.E.2d 606 (1990), aff'd, 145 Ill. 2d 336, 582 N.E.2d 510 (1991); *Resavage* v. *Davies*, 199 Md. 479, 86 A.2d 879 (1952); *Stadler* v. *Cross*, 295 N.W.2d 552 (Minn. 1980); *Asaro* v. *Cardinal Glennon Memorial Hospital*, 799 S.W.2d 595 (Mo. 1990); *Bovsun* v. *Sanperi*, supra, 61 N.Y.2d 219; *Whetham* v. *Bismarck Hospital*, 197 N.W.2d 678 (N.D. 1972); *Shelton* v. *Russell Pipe & Foundry Co.*, 570 S.W.2d 861 (Tenn. 1978); *Boucher* v. *Dixie Medical Center*, 850 P.2d 1179 (Utah 1992); *Vaillancourt* v. *Medical Center Hospital*, 138 Vt. 139, 425 A.2d 92 (1980).

Prior to the adoption of § 313 of the second Restatement of Torts, the first Restatement suggested, in its comments, a reasonable foreseeability rule. Indeed, as the Supreme Judicial Court of Massachusetts pointed out, the addition of the zone of danger test in § 313 (2) of the Restatement (Second) of Torts "was recommended with reluctance by the Reporter (Dean Prosser) and the advisers (Restatement [Second] of Torts 9-11 [Tent. Draft No. 5, 1960]), but the recommendation was thought to be compelled by the absence of then recent authority in support of a contrary view. . . . As a result of adding § 313 (2), a caveat appearing in the first Restatement of Torts was deleted. That caveat had left open the question whether a person might be liable 'to the parent or spouse who witnesses the peril or harm of the child or spouse and thereby suffers anxiety or shock' causing bodily harm to the parent or spouse. Restatement of Torts § 313, at 851 (1934)." (Citation omitted.) *Dziokonski* v. *Babineau*, 375 Mass. 555, 563, 380 N.E.2d 1295 (1978).

## B

*Dillon* was decided three years after the American Law Institute had adopted the zone of danger limitation on bystander emotional distress set forth in §§ 313 and 436 of the Restatement (Second), supra. *Dillon* changed the landscape for claims of bystander emotional distress. As previously noted, the California Supreme Court decided *Dillon* based upon general principles of foreseeability, with its limitations to be decided on a case-by-case basis. The three factors in *Dillon* were not conditions or limitations, but, rather, circumstances to consider in determining whether the emotional injury was reasonably foreseeable. In 1989, however, a majority of the California Supreme Court in *Thing* v. *La Chusa*, 48 Cal. 3d 644, 771 P.2d 814, 257 Cal. Rptr. 865 (1989), found that recovery of bystander emotional distress based upon "reasonable foreseeability"

required limitations. The court in *Thing* was concerned with the broad scope of liability under the foreseeability rule: "[I]t is clear that foreseeability of the injury alone is not a useful 'guideline' or a meaningful restriction on the scope of the [bystander emotional distress] action. The *Dillon* experience confirms, as one commentator observed, that '[f]oreseeability proves too much. . . . Although it may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm.' Rabin, ['Tort Recovery for Negligently Inflicted Economic Loss: A Reassessment,' 37 Stan. L. Rev. 1513, 1526 (1985)]. It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited." *Thing* v. *La Chusa*, supra, 663–64. The California Supreme Court concluded that "drawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts." Id., 666.

Accordingly, in *Thing*, the court held "that a plaintiff may recover damages for emotional distress caused by observing the negligently inflicted injury of a third person if, but only if, said plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." Id., 667–68.

A number of jurisdictions have adopted the *Thing* guidelines in an effort to limit the scope of the defendant's duty to third party bystanders. See *Cameron* v. *Pepin*, 610 A.2d 279, 284 (Me. 1992) ("defendant's duty should be limited to the emotional vulnerability that arises in parents upon actually witnessing their child receiving an injury"); *Nugent* v. *Bauermeister*, 195 Mich. App. 158, 161, 489 N.W.2d 148 (1992) (limited recovery to immediate family members as opposed to close friends); *Marchetti* v. *Parsons*, 638 A.2d 1047, 1052 (R.I. 1994) ("[w]e find the reasoning of the California Supreme Court [in *Thing*] persuasive and follow its lead in modifying the *Dillon* standard that we [previously] followed"); *Heldreth* v. *Marrs*, 188 W. Va. 481, 488, 425 S.E.2d 157 (1992) ("[h]aving the benefit of the *Thing* court's hindsight, we too adopt the requirement that a plaintiff in a negligent infliction of emotional distress action be present at the scene of the injury-producing event at the time it occurs and [be] aware that it is causing injury to the victim").

Nevertheless, a number of jurisdictions continue to apply the foreseeability rule as set forth in *Dillon*, rejecting completely or in part the limitations subsequently established by the court in *Thing*. See *Beck* v. *Dept. of Transportation & Public Facilities*, 837 P.2d 105, 110 (Alaska 1992) (retained liberal interpretation of *Dillon* guidelines and rejected restrictive approach taken by court in *Thing* regarding contemporaneous observation requirement); *Dunphy* v. *Gregor*, 136 N.J. 99, 106–108, 642 A.2d 372 (1994) (noting that it previously narrowed *Dillon*, the court rejected "a departure from our accustomed application of the traditional principles of tort law" or adoption of "hastily-drawn 'bright line' distinction[s]"); *Gain* v. *Carroll Mill Co.*, 114 Wash. 2d 254, 260–61, 787 P.2d 553 (1990) (applied foreseeability analysis similar to that set forth in *Dillon*, with exception that court requires physical presence at

scene of accident or arrival shortly thereafter); *Contreras* v. *Carbon County School District 1*, 843 P.2d 589, 594 (Wyo. 1992) (rejected *Thing* in favor of "broader immediacy rule, which allows the plaintiff to recover if she observes the injury shortly after it occurs without material change in the attendant circumstances").

Although we discussed *Dillon* at length in both *Amodio* and *Maloney*, in neither case did the factual scenario present the court with an opportunity to make a definitive ruling on whether to recognize a cause of action for bystander emotional distress. Central to this court's concern in *Amodio* and *Maloney* was that "the etiology of emotional disturbance is usually not readily apparent as that of a broken bone following an automobile accident . . . ." *Maloney* v. *Conroy*, supra, 208 Conn. 397. The problem is compounded when the underlying act of negligence with respect to the victim is medical malpractice because there generally is no significant observable sudden traumatic event by which the effect upon the bystander can be judged. For this precise reason most courts have recognized that a cause of action for bystander emotional distress must be confined in order to avoid limitless liability. "Without such perception, the threat of emotional injury is lessened and the justification for liability is fatally weakened." *Portee* v. *Jaffee*, 84 N.J. 88, 99, 417 A.2d 521 (1980).

C

This case affords us with an opportunity to reexamine this court's holding in *Strazza* in light of *Amodio* and *Maloney* and the law regarding bystander emotional distress that has developed over the last four decades. *Strazza* did not provide this court with an analysis for rejecting bystander emotional distress; rather, the court relied on the state of the law in other jurisdictions at that time in arriving at its conclusion.

Our first inquiry is to determine whether a tortfeasor may owe a legal duty to a bystander. "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . . Thus, initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff.

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong,

this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citations omitted; internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 385–86, 650 A.2d 153 (1994).

We believe the time is ripe to recognize a cause of action for bystander emotional distress. Under certain circumstances, which are hereinafter delineated, we conclude that a tortfeasor may owe a legal duty to a bystander. Consequently, a tortfeasor who breaches that duty through negligent conduct may be liable for a bystander's emotional distress proximately caused by that conduct. Accordingly, we now overrule *Strazza* to the extent that it conflicts with our opinion in this case.

We first conclude, as indicated below with respect to our justification for adopting the reasonable foreseeability theory, that bystander emotional distress is reasonably foreseeable. We further conclude that public policy requires that we recognize this duty owed by a tortfeasor to a bystander. See *Bohan* v. *Last*, 236 Conn. 670, 678, 236 A.2d 670 (1996) (change in public policy guided this court in recognizing cause of action against purveyors of alcohol to minors at bar who subsequently cause injury to innocent third parties). In drawing this conclusion, we have carefully weighed various public policy factors, including social and financial costs associated with recognizing this cause of action. We concur with the statement of the New Jersey Supreme Court that "the interest in personal emotional stability is worthy of legal protection against unreasonable conduct. The emotional harm following the perception of the

death or serious injury to a loved one is just as foreseeable as the injury itself, for few persons travel through life alone. Ultimately we must decide whether protecting these emotional interests outweighs an interest against burdening freedom of conduct by imposing a new species of negligence liability. We believe that the interest in emotional stability we have described is sufficiently important to warrant this protection. At the same time we are confident that limiting judicial redress to harm inflicted on intimate emotional bonds by the death or serious injury of a loved one serves to prevent liability from exceeding the culpability of [a] defendant's conduct." *Portee* v. *Jaffee*, supra, 84 N.J. 101.

In recognizing this cause of action, we adopt the "reasonable foreseeability" rule subject to the conditions set forth in this opinion. We do so for two principal reasons. First, an important consideration in determining whether a duty exists under our law of negligence has been the rule of foreseeability. *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 385–86. We have long held that the "ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Citations omitted; internal quotation marks omitted.) *Frankovitch* v. *Burton*, 185 Conn. 14, 20–21, 440 A.2d 254 (1981). On the basis of this concept of foreseeability, we concluded more than fifty years ago that it is "well within the logic of the law that where results which are regarded as proper elements of recovery as a consequence of physical injury are caused by fright or nervous shock due

to negligence, recovery should be permitted." *Orlo* v. *Connecticut Co.*, supra, 128 Conn. 238. Although in *Orlo* the plaintiff sought damages as a result of being fearful for his own safety, the sight of a loved one being injured can result in an emotional injury that is no less foreseeable than that experienced as the fear of injury to oneself. "Thus, we see no good reason why the general rules of tort law, including concepts of negligence, proximate cause and foreseeability, long applied to all other types of injury, should not govern . . . ." *Dillon* v. *Legg*, supra, 68 Cal. 2d 746.

Second, although the zone of danger test has an inherent limitation on liability that is relatively easy to determine, application of that doctrine could result in anomalous situations. For example, varying the factual allegations of this case slightly, assume that Clohessy stayed behind on the steps of the church watching her children, Brendan and Liam, proceed to cross Hillhouse Avenue, when Brendan was struck by the automobile being driven by the defendant. In that situation, Liam could recover, because he was in the zone of danger with his brother, but Clohessy could not. Her emotional trauma, however, would not be any less. Such was the situation in *Dillon*, wherein the court responded: "In the first place, we can hardly justify relief to the [sibling] for trauma which she suffered upon apprehension of the child's death and yet deny it to the mother merely because of a happenstance that the [sibling] was some few yards closer to the accident. The instant case exposes the hopeless artificiality of the zone-of-danger rule." Id., 733. Recognizing this artificiality, the Supreme Court of Pennsylvania in *Sinn* v. *Burd*, 486 Pa. 146, 157, 404 A.2d 642 (1979), concluded that the zone of danger requirement "creates the very evil that the test was designed to eliminate, i.e., arbitrariness," and therefore abandoned it for the foreseeability rule.[10]

---

[10] The Supreme Court of Pennsylvania had earlier adopted the zone of danger rule in *Niederman* v. *Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970).

In addition to noting the arbitrariness of the zone of danger rule, the *Sinn* court found a basic flaw in the rule: "[E]xperience has taught us that the zone of danger requirement can be unnecessarily restrictive and prevent recovery in instances where there is no sound policy basis supporting such a result. It has unquestionably not been effective in every instance of assuring that one may 'seek redress for every substantial wrong.' The restrictiveness of the zone of danger test is glaringly apparent where it is allowed to deny recovery to a parent who has suffered emotional harm from witnessing a tortious assault upon the person of his or her minor child. A majority of the commentators and a growing number of jurisdictions have considered this problem in recent years and have concluded that it is unreasonable for the zone of danger requirement to exclude recovery in such cases. This new awareness of the unfairness of the zone of danger requirement in these cases is based upon the implicit acceptance that the emotional impact upon a parent witnessing the killing of a minor child is at least as great and as legitimate as the apprehension that is inspired by a plaintiff being personally within the zone of danger." Id., 155–57.

We therefore conclude, on the basis of sound public policy and principles of reasonable foreseeability, that a plaintiff should be allowed to recover, within certain limitations, for emotional distress as a result of harm done to a third party. In doing so, we join the courts of other jurisdictions that have adopted the rule of foreseeability in various forms.[11]

---

[11] See *Tommy's Elbow Room, Inc.* v. *Kavorkian*, 727 P.2d 1038 (Alaska 1986); *Dillon* v. *Legg*, supra, 68 Cal. 2d 728; *Leong* v. *Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974) (proximate cause test adopted); *Barnhill* v. *Davis*, 300 N.W.2d 104 (Iowa 1981); *Lejeune* v. *Rayne Branch Hospital*, 556 So. 2d 559 (La. 1990); *Culbert* v. *Sampson's Supermarkets, Inc.*, 444 A.2d 433 (Me. 1982); *Dziokonski* v. *Babineau*, supra, 375 Mass. 555; *Toms* v. *McConnell*, 45 Mich. App. 647, 207 N.W.2d 140 (1973); *Entex, Inc.* v. *McGuire*, 414 So. 2d 437 (Miss. 1982); *James* v. *Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985); *State* v. *Eaton*, 101 Nev. 705, 710 P.2d 1370 (1985); *Corso* v. *Merrill*, 119

We are aware that the application of pure rules of foreseeability could lead to unlimited liability. "[T]here are ample policy concerns for setting limits or administrative boundaries establishing the permissible instances of recovery. There are fears of flooding the courts with 'spurious and fraudulent claims'; problems of proof of the damage suffered; exposing the defendant to an endless number of claims; and economic burdens on industry." *Lejeune* v. *Rayne Branch Hospital*, 556 So. 2d 559, 566 (La. 1990). For example, "[i]t would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends." W. Prosser & P. Keeton, Torts (5th Ed. 1984) § 54, p. 366; *Thing* v. *La Chusa*, supra, 48 Cal. 3d 666–67.[12]

---

N.H. 647, 406 A.2d 300 (1979); *Portee* v. *Jaffee*, supra, 84 N.J. 88; *Ramirez* v. *Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983); *Johnson* v. *Ruark Obstetrics & Gynecology Associates*, 327 N.C. 283, 395 S.E.2d 85 (1990); *Paugh* v. *Hanks*, 6 Ohio St. 3d 72, 451 N.E.2d 759 (1983); *Sinn* v. *Burd*, supra, 486 Pa. 146; *D'Ambra* v. *United States*, 114 R.I. 643, 338 A.2d 524 (1975); *Kinard* v. *Augusta Sash & Door Co.*, 286 S.C. 579, 336 S.E.2d 465 (1985); *Freeman* v. *Pasadena*, 744 S.W.2d 923 (Tex. 1988); *Hunsley* v. *Giard*, 87 Wash. 2d 424, 553 P.2d 1096 (1976); *Heldreth* v. *Marrs*, supra, 188 W. Va. 481; *Bowen* v. *Lumbermens Mutual Casualty Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994); *Gates* v. *Richardson*, 719 P.2d 193 (Wyo. 1986).

[12] Other concerns have been raised that have previously been put to rest or are sufficiently addressed by the limitations we impose on a bystander cause of action. In *Orlo* v. *Connecticut Co.*, supra, 128 Conn. 238, this court rejected the argument that recovery solely for emotional disturbances should not be allowed because they are "subjective states of the mind, difficult properly to evaluate and of such a nature that proof by the party claiming the injury is too easy and disproof by the party sought to be charged is too difficult, to make it safe as [a] matter of policy for the law to deal with them, and that, therefore, to permit recovery in such cases would open a wide field for fictitious claims with which the law cannot satisfactorily deal." The court stated that "[c]ertainly it is a very questionable position for a court to take, that because of the possibility of encouraging fictitious claims compensation should be denied those who have actually suffered serious injury through the negligence of another." Id., 239.

With these considerations in mind, and borrowing from the experience of other jurisdictions, we agree that specific limitations must be imposed upon the reasonable foreseeability rule. We recognize that those limitations, albeit somewhat arbitrary, are "necessary in order not to leave the liability of a negligent defendant open to undue extension by the verdict of sympathetic juries, who under our system must define and apply any general rule to the facts of the case before them. . . . Prosser, Torts (4th Ed.) § 54, p. 335." (Internal quotation marks omitted.) *Amodio* v. *Cunningham*, supra, 182 Conn. 93 n.11; *Thing* v. *La Chusa*, supra, 48 Cal. 3d 666. Accordingly, for a cause of action for bystander emotional distress, we adopt the reasonable foreseeability rule subject to the following conditions.[13]

The court in *Orlo* also rejected the claim that causation was difficult to prove, noting "that in many situations the negligence might be found to have been a substantial factor in producing the results consequent upon fright or nervous shock does not admit of doubt. That the causation may be properly established by competent evidence appears from the decisions previously cited where there was a slight battery or physical injury but the substantial damage is traced back to the claimed negligent condition through intervening fright or shock." Id., 238; *Dziokonski* v. *Babineau*, supra, 375 Mass. 566.

Likewise, in *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 408 A.2d 260 (1979), with respect to allowing a cause of action for loss of consortium, this court rejected the claim that it was too difficult to assess damages. "The difficulty of assessing damages for loss of consortium is not a proper reason for denying the existence of such a cause of action inasmuch as the logic of [that reasoning] would also hold a jury incompetent to award damages for pain and suffering. . . . The subjective states such as grief, fright, anxiety, apprehension, humiliation and embarrassment have long been viewed as genuine and deemed compensable under the concept of pain and suffering. . . . The task of computing damages for a loss of consortium is no more difficult for a judge or jury than arriving at an award for pain and suffering." (Citations omitted; internal quotation marks omitted.) Id., 493–94.

[13] "We note that there is a contrary view to the effect that the establishment of guidelines circumvents the general principles of duty and negligence, and that those general principles should be used in all cases to determine if recovery should be permitted. See Harper, James & Gray, The Law of Torts, Vol. 3, § 18.4, at 704–705 (1986)." *Lejeune* v. *Rayne Branch Hospital*, supra, 556 So. 2d 569 n.10.

First, we hold that in order to recover for emotional distress, the bystander must be "closely related to the injury victim." *Thing* v. *La Chusa,* supra, 48 Cal. 3d 667. In this case, the relationship of the parent and the sibling to the victim satisfies this condition. "The class of potential plaintiffs should be limited to those who because of their relationship suffer the greatest emotional distress. When the right to recover is limited in this manner, the liability bears a reasonable relationship to the culpability of the negligent defendant." Id. This court has previously recognized the importance of such relationships within the framework of our tort law. For example, the court recognized in the context of loss of consortium between husband and wife that "the mental and emotional anguish caused by seeing a healthy, loving, companionable mate turn into a shell of a person is undeniably a real injury." *Hopson* v. *St. Mary's Hospital,* 176 Conn. 485, 493, 408 A.2d 260 (1979). We leave to another day the question of what other relationships may qualify.

Second, the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or conduct that causes the injury; *Thing* v. *La Chusa,* supra, 48 Cal. 3d 668; *Cameron* v. *Pepin,* supra, 610 A.2d 284; *Portee* v. *Jaffee,* supra, 84 N.J. 99; *Marchetti* v. *Parsons,* supra, 638 A.2d 1052; *Kinard* v. *Augusta Sash & Door Co.,* 286 S.C. 579, 583, 336 S.E.2d 465 (1985); *Heldreth* v. *Marrs,* supra, 188 W. Va. 488; or by viewing the victim immediately after the injury causing event if no material change has occurred with respect to the victim's location and condition. *Gain* v. *Carroll Mill Co.,* supra, 114 Wash. 2d 261 ("A defendant has a duty to avoid the negligent infliction of emotional distress. However, this duty does not extend to those plaintiffs who have a claim for mental distress caused by the negligent bodily injury of a family member, unless they are physically present at the scene of the accident

or arrive shortly thereafter. Mental distress where the plaintiffs are not present at the scene of the accident and/or arrive shortly thereafter is unforeseeable as a matter of law."); *Gates* v. *Richardson*, 719 P.2d 193, 198–99 (Wyo. 1986) (plaintiff who observes infliction of serious bodily harm or death, or observes serious bodily harm or death shortly after its occurrence but without material change in condition or location of victim can recover under tort of negligent infliction of emotional distress); see *Tommy's Elbow Room, Inc.* v. *Kavorkian*, 727 P.2d 1038 (Alaska 1986); *Masaki* v. *General Motors Corp.*, 71 Haw. 1, 780 P.2d 566 (1989); *Lejeune* v. *Rayne Branch Hospital*, supra, 556 So. 2d 559; *Dziokonski* v. *Babineau*, supra, 375 Mass. 555;[14] *James* v. *Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985); *Corso* v. *Merrill*, 119 N.H. 647, 406 A.2d 300 (1979); *General Motors Corp.* v. *Grizzle*, 642 S.W.2d 837 (Tex. App. 1982); *Bowen* v. *Lumbermens Mutual Casualty Co.*, 183 Wis. 2d 627, 517 N.W.2d 432 (1994).

Third, the injury to the victim must be substantial, resulting in either death or serious physical injury. *Lejeune* v. *Rayne Branch Hospital*, supra, 556 So. 2d 570

[14] We decline to follow *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 518–19, 413 N.E.2d 690 (1980), wherein the Massachusetts Supreme Judicial Court expanded the *Dziokonski* rule to include emotional distress claims predicated on viewing the injured person at the hospital rather than at the scene of the accident. The critical factors are the circumstances under which the observation is made, and not any rigid adherence to the length of time that has passed since the accident. It is commonsensical that the greater the lapse of time, the less likely it is that the plaintiff will suffer the initial shocking experience of contemporaneous observation of serious injury or the grisly effects thereof. We note that Alaska has followed the Massachusetts expansion in *Beck* v. *Dept. of Transportation & Public Facilities*, supra, 837 P.2d 105, where, by its "liberal interpretation of the *Dillon* guidelines"; id., 109; the Alaska Supreme Court held that despite the initial viewing of her daughter on a hospital gurney, the plaintiff's "emotional shock resulted from her observation of her daughter's traumatic injuries during the continuous flow of events in the immediate aftermath of the accident, and because it cannot be said that she had time to 'steel herself' . . . we conclude that her injury was foreseeable." Id., 111.

("[t]he direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience"). Any injury to one who is closely related to the bystander has an emotional impact. To a sensitive parent, witnessing a minor injury to his or her child could produce an emotional response and result in serious injury. Nevertheless, under those circumstances, a cause of action for bystander emotional distress will not lie. "While any harm to a spouse or a family member causes sorrow, we are here concerned with a more narrowly confined interest in mental and emotional stability. When confronted with accidental death [or serious injury] the reaction to be expected of normal persons . . . is shock and fright." (Citations omitted; internal quotation marks omitted.) *Portee* v. *Jaffee*, supra, 84 N.J. 100. Although the tortfeasor takes his victim as he finds him or her; *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 493; D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 171, p. 485; it is essential that the liability for bystander emotional distress be circumscribed.

Finally, the plaintiff bystander must have sustained a serious emotional injury—that is, "a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstance." *Thing* v. *La Chusa*, supra, 48 Cal. 3d 668; see *Ramirez* v. *Armstrong*, 100 N.M. 538, 542, 673 P.2d 822 (1983); *Paugh* v. *Hanks*, 6 Ohio St. 3d 72, 78, 451 N.E.2d 759 (1983); *Sinn* v. *Burd*, supra, 486 Pa. 168. This injury may be purely emotional and need not manifest itself physically. See *Delott* v. *Roraback*, 179 Conn. 406, 409, 426 A.2d 791 (1980) ("[a] plaintiff may recover damages in a personal injury action for pain and suffering even when such pain and suffering is evidenced exclusively by the plaintiff's subjective complaints"); *Leong* v. *Takasaki*, 55 Haw. 398, 408, 520 P.2d

758 (1974) (serious emotional distress may properly be found where reasonable person " 'normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances' "); *Folz* v. *State*, 110 N.M. 457, 470, 797 P.2d 246 (1990) (illogical to require "as a threshold element the presence of physical injury to manifest the emotional trauma induced by the contemporaneous sensory perception of the death or physical injury of a close loved one"); *Sorrells* v. *M.Y.B. Hospitality Ventures of Asheville*, 334 N.C. 669, 672, 435 S.E.2d 320 (1993) ("plaintiff must show an 'emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so' "); *Paugh* v. *Hanks*, supra, 78 ("serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case"); *Sinn* v. *Burd*, supra, 168 (in agreement with *Leong* court); *Boyles* v. *Kerr*, 855 S.W.2d 593, 598 (Tex. 1993) ("[w]e also are not imposing a requirement that emotional distress manifest itself physically to be compensable"); *Heldreth* v. *Marrs*, supra, 188 W. Va. 490 ("Serious emotional distress which results from witnessing a closely related person critically injured or killed can be, in some cases, as debilitating and as severe as a physical injury. More importantly, serious emotional distress can be diagnosed even in the absence of any physical manifestation, and can be proven with medical and psychiatric evidence."); *Culbert* v. *Sampson's Supermarkets, Inc.*, 444 A.2d 433, 438 (Me. 1982) ("proof of physical manifestations of the mental injury is no longer required"); *Bowen* v. *Lumbermens Mutual Casualty Co.*, supra, 183 Wis. 2d 653 (plaintiff "need not prove physical manifestation of severe emotional

distress"). "Serious emotional distress, of course, goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating. . . . A nonexhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock." (Citation omitted; internal quotation marks omitted.) *Lejeune* v. *Rayne Branch Hospital*, supra, 556 So. 2d 570.

To summarize, we conclude that a bystander may recover damages for emotional distress under the rule of reasonable foreseeability if the bystander satisfies the following conditions: (1) he or she is closely related to the injury victim, such as the parent or the sibling of the victim; (2) the emotional injury of the bystander is caused by the contemporaneous sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location; (3) the injury of the victim must be substantial, resulting in his or her death or serious physical injury; and (4) the bystander's emotional injury must be serious, beyond that which would be anticipated in a disinterested witness and which is not the result of an abnormal response.

The allegations of the third count of the complaint seeking damages for bystander emotional distress fall within the reasonable foreseeability rule subject to the limitations we have delineated. From the allegations in the third count, a fact finder reasonably could conclude that Clohessy and Liam were closely related to Brendan, that their emotional injury was caused by the contemporaneous sensory perception of the defendant's alleged negligence, that Brendan died as a result of the defendant's alleged negligence, and that the emotional distress of Clohessy and Liam was severe. We conclude that

the allegations of the third count of the complaint allege a cause of action for bystander emotional distress, a cause of action that we recognize.

## II

The defendants argue that if we adopt a cause of action for bystander emotional distress, it should be applied prospectively only because they were not put on notice that we would recognize such a duty. Traditionally, however, in cases of civil tort liability in which new causes of action are recognized, the new theory of liability is applied to the parties in the case.[15] See *Bohan* v. *Last*, supra, 236 Conn. 670; *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 485.

Moreover, this cause of action was clearly foreshadowed. Although in *Strazza* v. *McKittrick*, supra, 146 Conn. 714, this court stated that a bystander, under the facts of that case, could not recover, the statement is dictum with respect to this case. The plaintiff in *Strazza* did not meet all of the conditions that we have concluded are necessary for a defendant to be liable to a bystander. Furthermore, our decision in *Amodio* v. *Cunningham*, supra, 182 Conn. 80, decided fourteen years before the events in this case occurred, wherein we discussed *Dillon* v. *Legg*, supra, 68 Cal. 2d 728, at length, contained language that was sufficient to put the defendants on notice that bystander emotional distress was not foreclosed in Connecticut. Finally, the trial courts of this state, prior to the events of this case, had recognized an action for bystander emotional distress. See, e.g., *Glendening* v. *Weis*, 41 Conn. Sup. 165, 166–68, 560 A.2d 995 (1988); see also *Kearney* v. *Philips Industries, Inc.*, 708 F. Sup. 479, 483 (D. Conn. 1989) ("Several judges of the Connecticut Superior Court have ruled on bystander emotional distress claims in accident situ-

---

[15] The recognition of a cause of action for bystander emotional distress surely had no influence on the defendant's alleged negligent conduct.

ations not involving medical malpractice. The majority of these judges have refused to strike such claims from the complaint, applying the three criteria of *Dillon* . . . .". Accordingly, we reject the defendants' claim that the cause of action for bystander emotional distress should be applied prospectively only and conclude that it has full application to this case.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other justices concurred.