[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS AND PROCEDURAL BACKGROUND
Eric A. Verona, Administrator of the estate of his son Jason L. Verona commenced a wrongful death action on September 22, 1998 alleging medical negligence of the defendant Michael A. Levine, M.D. and of the co-defendant Marvin Levine, M.D. In a revised complaint in June of 1999 Eric Verona and his wife Pamela Verona also asserted claims in their individual capacity. Eric Verona asserted a claim of loss of filial consortium in Count Five and a claim of bystander emotional distress in Count Six. Pamela Verona asserted a claim of loss of filial consortium of her son in Count Nine and a claim of bystander emotional distress in Count Ten.
Factually the plaintiffs allege that on September 30, 1996 Dr. Michael Levine, M.D. was the on-call pediatric physician covering for Marvin Levin, M.D., the decedent's primary pediatrician. In a series of phone calls the doctors were told that the decedent had an inability to eat, was lethargic, had an inability to keep his head up, had his eyes rolling back into his head, and had his eyes dilated. The parents were given some medical instructions over the phone which they claim to have followed and they further allege that at least one telephone call was not returned. The parents discovered Jason Verona dead on the morning of October 1, 1996 as a result of a small bowel obstruction.
 DECISION
The court strikes each of the claims relating to a filial loss of consortium because the court finds that this matter is controlled by the Supreme Court decision in Mendillo v. Board ofEducation of the Town of East Haddam, 246 Conn. 456,717 A.2d 1177 (1998). To the plaintiffs' credit, their attorney has conceded the application of Mendillo and has stated that "those allegations will be withdrawn following the court's decision on the infliction of emotional distress claims." CT Page 13523
This court also strikes the emotional distress claims contained in Counts Four, Six, Eight, Ten but acknowledges that these counts present a considerably more complex problem.
The history of emotional bystander causes of action has been somewhat confusing both in Connecticut and in other jurisdictions. In Connecticut an examination of the problem begins with Strazza v. McKittrick, 146 Conn. 714 (1959). There the court held that a mother could not recover for nervous shock resulting from the fear of injury to her child after a truck ran into the porch of her house. The Strazza court held that Connecticut would follow the prevailing view that such claims must be rejected as such injuries are too remote in the chain of causation to permit recovery. Strazza at 719.
The Connecticut Supreme Court next considered Amodio v.Cunningham, 182 Conn. 80 (1980). In rejecting the plaintiff's bystander emotional distress claim, the court exhaustibly reviewed the decisions of other jurisdictions, specifically noting the "divergence of opinion" on the issue, but ultimately reaching the same conclusion that it had in Strazza. In Amodio, a mother sought damages for physical, mental and emotional harm caused by witnessing the deterioration of her daughter's health and her daughter's ultimate death due to the defendant's alleged malpractice.
Our Supreme Court then came to what is arguably the seminal case on emotional bystander recovery in a malpractice setting. In 1988, the court decided Maloney v. Conroy, 208 Conn. 293 (1988). The Trial Court had granted the defendant's motion to strike the claim and the Supreme Court affirmed:
 "In her appeal, the plaintiff has raised the single issue of whether one who is closely related to a victim of alleged malpractice may recover for a severely emotional disturbance claimed to have resulted from observing the malpractice perpetrated on the victim. We hold that a bystander to medical malpractice may not recover for emotional distress and accordingly find no error in the striking of the [claim] by the trial court."
In Maloney the plaintiff sought damages from two physicians and a hospital for severe emotional distress alleged to have resulted from witnessing the malpractice of the defendants in treating her mother. Allegedly the defendant's malpractice caused CT Page 13524 the death of the plaintiff's mother.
Finally, the Supreme Court came to Colhessy v. Bachelor,237 Conn. 31 (1996).
In Colhessy, the plaintiff mother and plaintiff brother of the decedent sued after the decedent died as a result of injuries received when the three were crossing a street. The decedent was struck by a motor vehicle driven by the named defendant and the mother and brother sought damages for the negligent infliction of emotional distress.
Colhessy established a four part test under which a count for negligent infliction of emotional distress would lie within the fact pattern of a motor vehicle accident. The second prong of that test was "the bystander's emotional injury must be caused by the contemporaneous sensory perception of the event or the conduct that causes the injury". Colhessy at 52.
Colhessy, an automobile negligence case, specifically overrules Strazza also a motor vehicle accident case. Strazza was to some extent the underpinnings for the result reached in Amodio
and Maloney.
The question which faces this court, and a number of other superior court judges, is whether the second prong of theColhessy test "contemporaneous sensory perception", if it is present with the remaining three prongs of the test, allow emotional bystander claims in medical malpractice cases. NeitherStrazza nor Colhessy, which overrules it, were medical malpractice cases. Amodio was clearly a medical malpractice case but probably did not satisfy the "contemporary sensory perception" standard. Maloney is not specifically overruled byColhessy.
This court cannot escape the fact that the Supreme Court held:
 "We hold that a bystander to medical malpractice may not recover for emotional distress . . ."
For the foregoing reasons the court is persuaded that the rule in Maloney, precluding bystander emotional distress claims arising out of medical malpractice, survives Colhessy. It is significant that while Colhessy discusses Strazza, Amodio and CT Page 13525Maloney, the Colhessy court overruled only Strazza. The fact that the Maloney court did not expressly overrule Colhessy is telling since Maloney is of such recent vintage. Had there been a majority of the Supreme Court in Colhessy in favor of overrulingMaloney, the court is persuaded that the Supreme Court would have done so expressly.
The opinions of the Supreme Court of Connecticut are binding upon the Superior Court and it appears to this court that the rule of Maloney is clear, explicit and unmodified by Colhessy
insofar as it pertains to medical malpractice cases.
The motions to strike paragraphs 3, 4, 5, 6, 7, 8, 9, and 10 are granted.
Kevin E. Booth, J.