[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE BY DEFENDANTNORTHEAST UTILITIES SERVICE COMPANY and THE CONNECTICUT LIGHT AND POWERCOMPANY (#167)
This case arises out of the tragic death of the plaintiff's decedent, Frederick McGinnis, on November 11, 1999. Mr. McGinnis, on September 13, 1999, while employed by Gallagher Electric, was working on the electrical equipment of the defendant Cellu-Tissue Corporation in its business premises when he was tragically injured by electrical equipment. Mr. McGinnis succumbed to his injuries on November 11, 1999. The moving defendants, Northeast Utilities Service Company (NUSCO) and the Connecticut Light Power Company (CLP) are alleged to have provided to the Cellu-Tissue premises "very high voltage and very high amperage" electrical service. These defendants have moved to strike counts 17, 18, 19, 20, 21, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 34 of the revised amended complaint. Counts 17, 18, 21, 22, 25, 26, 29 and 30 allege a cause of action for loss of parental consortium. Count 31 (paragraph 22), count 32 (paragraph 21), count 33 (paragraph 22) and count 34 (paragraph 21) assert a claim for bystander emotional distress. Counts 19, 20, 21, 22, 27, 28, 29, 30, 32 and 34 assert claims for strict liability based on a claim that the provision of electrical service is an ultra-hazardous activity. The plaintiff has opposed the motion to strike.
The function of a motion to strike is to test the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book § 10-39(a) (5). "[A motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . ." (Citations omitted; emphasis omitted). Mingachos v.CVS, Inc., 196 Conn. 91, 108, 498 A.2d 368 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted). NovametrixMedical Systems v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). "The role of the trial court is to examine the pleadings and CT Page 15362 construe the allegations in the light most favorable to the pleader in order to determine whether the pleader has stated a legally sufficient cause of action or defense." ATC Partnership v. Windham, 251 Conn. 597,603, 741 A.2d 305, cert. denied, 530 U.S. 1214, 120 S.Ct. 2217,147 L.Ed.2d 249 (1999).
I. Loss of Parental Consortium
In counts 17, 18, 21, 22, 25, 26, 29 and 30, the minor children of plaintiff's decedent assert claims for loss of parental consortium. Our Supreme Court has specifically indicated that Connecticut law does not recognize a cause of action sounding in loss of parental consortium, holding that
 the general rule of limiting the tortfeasor's liability to the person directly harmed should prevail. Although, in light of the minor plaintiff's arguments, the question is a close one, the balance of policy considerations fails to establish the additional justification necessary to support recognition of a legal duty on the part of a tortfeasor to compensate the children of the person whom the tortfeasor has harmed directly for their loss of consortium with their parent. We reach this conclusion primarily on the basis of: the fact that recognition of the cause of action would require arbitrary limitations; the additional economic burden that recognition would impose on the general public; the uncertainty that recognition would yield significant social benefits; the substantial risk of double recovery; and the weight of judicial authority.
Mendillo v. Board of Education, 246 Conn. 456, 484-85, 717 A.2d 1177
(1998). Also see Foran v. Carangelo, 153 Conn. 356, 216 A.2d 638 (1966).Mendillo v. Board of Education, supra, 246 Conn. 456, represents controlling authority requiring this court to strike the claim for loss of parental consortium.
II. Bystander Emotional Distress
In Clohessy v. Bachelor, 237 Conn. 31, 675 A.2d 852 (1996) the Connecticut Supreme Court recognized a cause of action for bystander emotional distress, setting forth the criteria necessary for maintaining such a claim. Included within those criteria is the requirement that "the emotional injury of the bystander is caused by the contemporaneous CT Page 15363 sensory perception of the event or conduct that causes the injury, or by arriving on the scene soon thereafter and before substantial change has occurred in the victim's condition or location." Id., 56.
In this jurisdiction, a claim for bystander emotional distress is limited by the criteria set forth in Clohessy v. Bachelor, supra,237 Conn. 31, which include a requirement that the bystander either have a contemporaneous sensory perception of the event or conduct that causes the injury, or arrives on the scene soon thereafter before change has occurred in the victim's condition or location. The complaint does not allege that Mrs. McGinnis was at the work site on the day of the September 13, 1999 injuries; it is instead alleged that she observed her husband later at the hospital.
The plaintiff cites cases from other jurisdictions that recognize emotional distress claims under similar circumstances: Ferriter v. DanielO'Connell's Sons, Inc., 381 Mass. 507, 518-19, 413 N.E.2d 690 (1980); andBeck v. Dept. of Transportation Public Facilities, 837 P.2d 105
(1992). In view of the controlling authority in Clohessy v. Bachelor, supra, 237 Conn. 31, this court is not free to apply law from other jurisdictions. The complaint does not allege that Mrs. McGinnis was a bystander at the scene, or that she arrived on the scene soon after the accident, or that she observed the victim before substantial change had occurred in the victim's condition or location. The complaint therefore fails to include allegations sufficient to meet the criteria outlined inClohessy v. Bachelor, supra, 237 Conn. 31. Accordingly, the court is compelled by law to grant the motion to strike the bystander emotional distress claim.
III. Ultrahazardous Activity
Counts 19, 20, 21, 22, 27, 28, 29, 30, 32 and 34 allege that the provision of electrical service is an ultrahazardous activity that is subject to the law of strict liability.
Connecticut law historically has applied the doctrine of strict liability in a very limited fashion with respect to circumstances involving ultrahazardous activities.
 Under this doctrine, a plaintiff is not required to show that his loss was caused by the defendant's negligence. It is sufficient to show only that the defendant engaged in an ultrahazardous activity that caused the defendant's loss. The doctrine has traditionally been applied in cases involving blasting CT Page 15364 and explosives. See D. Wright J. Fitzgerald, Connecticut Law of Torts (3d Ed.) 122. Connecticut's sole extension beyond blasting cases is to damage from a concussion resulting from pile driving. Caporale v. C. W. Blakeslee Sons, Inc., 149 Conn. 79, 85, 175 A.2d 61 (1961). Although liability was initially limited to damage directly caused by flying debris resulting from the explosion, this was in time expanded to include damage caused by concussion or vibration. Whitman Hotel Corp. v. Elliot Watrous Engineering Co., 137 Conn. 562, 570, 79 A.2d 591
(1951). The Whitman court held that "[a] person who uses an intrinsically dangerous means to accomplish a lawful end, in such a way as will necessarily or obviously expose the person of another to the danger of probable injury, is liable if such injury results even though he uses all proper care." Id., 565.
Green v. Ensign-Bickford Co., 25 Conn. App. 479, 482-83, 595 A.2d 1383
(1991). In the aftermath of Whitman Hotel Corporation v. Elliot Watrous Engineering Co., supra, 137 Conn. 562, the Connecticut Supreme Court on two occasions has declined to impose strict liability on electric utility companies. See Senderoff v. Housatonic Public ServiceCo., 147 Conn. 18, 20-21, 156 A.2d 517 (1959), and Citerella v. United Illuminating Co., 158 Conn. 600, 266 A.2d 382 (1969)
Connecticut trial courts unanimously have rejected claims of strict liability against electric utilities based on allegations of an ultrahazardous activity. Plourde v. Hartford Electric Light Co.,31 Conn. Sup. 192, 326 A.2d 848 (1974); Klotz v. Connecticut Light Power Co., Superior Court, judicial district of Fairfield, No. 041767 (Nov. 9, 1979, Melville, J.) M. Monteiro Sons, Inc. v. ConnecticutLight Power Co., Superior Court, judicial district of Danbury, No. 030234 (May 9, 1991, Moraghan, J.). This is the rule, as well, in other jurisdictions. See 29 C.J.S. Electricity §§ 38, 39; 26 Am.Jur.2dElectricity, Gas Steam, § 39; Notes, 32 A.L.R.2d 244, 248 § 2, 69 A.L.R.2d 93, 98 § 3.
Connecticut courts also have rejected attempts to impose strict liability on gas utility companies. McDermott v. Southern Connecticut GasCo., 7 Connecticut Law Tribune 2, p. 12 (Jan. 12, 1981); Lowe v. ColbergCo., 6 Connecticut Law Tribune 44, p. 17 (Nov. 3, 1980); Auriemme v.Bridgeport Gas Co., 21 Conn. Sup. 66, 144 A.2d 701 (1958).
The court determines as a matter of law that providing electric service, CT Page 15365 including high voltage and high amperage service, is not an ultrahazardous activity for which the defendant utilities may be held strictly liable.
IV. Conclusion
The motion to strike (#167) is granted in its entirety.
McWEENEY, JUDGE. CT Page 15366